**Electronically Filed
Intermediate Court of Appeals
30365
30-JUN-2011
08:01 AM**

NO. 30365

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Respondent-Appellee,
v.
NICHOLAS DELYON, Petitioner-Appellant.


APPEAL FROM THE DISTRICT COURT OF THE FIFTH CIRCUIT
(CASE NO. S5P204-00189 & CR. NO. KOC04-189)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Leonard and Ginoza, JJ.)


Petitioner-Appellant Nicolas Robert Delyon (Delyon) appeals from the "Order Denying Petition to Vacate, Set Aside, or Correct Judgment Filed on July 09, 2009" entered on January 26, 2010 (January 26, 2010 Order) and the "Findings of Fact, Conclusions of Law, and Decision and Order Denying Petition to Vacate, Set Aside, or Correct Judgment", entered on August 7, 2009 (August 7, 2009 Order). Both orders were entered in the District Court of the Fifth Circuit (District Court).[1]

Delyon was eighteen years old and visiting Hawaii with his parents when he was arrested for the offense in this case.

_____

[1] The Honorable Walton D. Y. Hong presided.

1

On September 2, 2004, Delyon was charged with Theft in the Fourth Degree in violation of Hawaii Revised Statutes (HRS) § 708-833(1) (1993). Pursuant to a "Waiver of Physical Presence [and] Submission of Plea" (Waiver and Submission of Plea) signed by Delyon and his trial counsel, the District Court accepted a no contest plea on behalf of Delyon without Delyon's presence at the hearing. Delyon was convicted of Theft in the Fourth Degree and, on February 3, 2005, sentenced to a $150 fine.

More than four years later, on July 9, 2009, Delyon filed a Petition to Vacate, Set Aside, or Correct Judgment, pursuant to Rule 40 of the Hawaii Rules of Penal Procedure (HRPP) (Petition). Delyon claimed in his Petition that (1) his plea was not entered knowingly or voluntarily, and (2) he received ineffective assistance of counsel. The District Court issued its August 7, 2009 Order, making findings of fact, conclusions of law and denying the Petition without a hearing. The District Court thereafter also issued the January 26, 2010 Order, denying the Petition pursuant to the August 7, 2009 Order.

On appeal, Delyon contends that the District Court erred in denying his Rule 40 Petition without a hearing because he established colorable claims that: (1) his no contest plea was not knowingly made; and (2) his trial counsel provided ineffective assistance of counsel by entering a plea agreement without Delyon's knowledge or consent, obtaining Delyon's waiver of rights and guilty plea without informing Delyon of the terms of the plea agreement, failing to inform Delyon that the consequence of his plea would be a judgment of conviction, and failing to inform Delyon of the outcome of the plea and sentencing hearings.[2]

---

[2] As part of his points of error, Delyon challenges conclusions of law 3-4 and findings of fact 4, 6, 15, 17, 19, and 20 in the District Court's August 7, 2009 Order. Because we agree with the major points raised in

2

Taking the allegations in Delyon's Petition as true, as required by Rule 40(f) of the Hawai'i Rules of Penal Procedure (HRPP), we conclude that it was error for the District Court not to hold a hearing to consider and address Delyon's Petition. We express no opinion on the ultimate merits of the allegations in the Petition, but determine that the Petition alleges sufficient facts that a hearing should be held.

**I.    Standards of Review**

**A.    Hearing for Rule 40 Petition**

HRPP Rule 40(f) addresses when a hearing should be held for a Rule 40 petition. It states, in relevant part:

> (f) *Hearings.* If a petition alleges facts that <u>if proven</u> would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner. The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held during the course of the proceedings which led to the judgment or custody which is the subject of the petition or at any later proceeding.

(Emphasis added).

On appeal, we review *de novo* the question of whether a hearing should have been held for Delyon's Rule 40 petition.

> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that <u>if taken as true</u> the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing. *The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.*

---

Delyon's appeal, we need not address his specific challenges to these findings and conclusions by the District Court.

> In this regard, the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue. Because the appellate court's determination of "whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court" is a question of law, the trial court's decision is reviewed *de novo*. . . . Therefore, we hold that the issue whether the trial court erred in denying a Rule 40 petition without a hearing based on no showing of a colorable claim is reviewed *de novo*; thus, the right/wrong standard of review is applicable.

Barnett v. State, 91 Hawai'i 20, 26, 979 P.2d 1046, 1052 (1999)(citations, brackets and ellipsis omitted; italicize emphasis in original; underline emphasis added).

### B.    Withdrawal of No Contest Plea

"The standard of review for the withdrawal of a nolo contendere plea after sentence is based on a showing of necessity to avoid manifest injustice." State v. Cornelio, 68 Haw. 644, 646, 727 P.2d 1125, 1126 (1986).

### C.    Ineffective Assistance of Counsel

We apply the following standard in reviewing a claim of ineffective assistance of counsel:

> When reviewing a claim of ineffective assistance of counsel, [the appellate court] looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice.

State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (internal quotation marks, citations, and footnote omitted).

## II.  Discussion

### A.  Petition Alleges a Colorable Claim Warranting a Hearing That Delyon Did Not Knowingly Enter His Plea

In determining whether a hearing was required on Delyon's Rule 40 Petition, we must consider whether the Petition "alleges facts that if proven would entitle the petitioner to relief[.]" HRPP Rule 40(f) (emphasis added). That is, "[t]o establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict [or outcome], however, a petitioner's conclusions need not be regarded as true." Barnett, 91 Hawai'i at 26, 979 P.2d at 1052 (citation omitted)(emphasis added).

Here, Delyon contends, and we agree, that his Petition states a colorable claim that he did not enter a knowing and intelligent plea and thus the District Court should have held a hearing to determine whether Delyon was entitled to withdraw his plea to correct a manifest injustice.

The Waiver and Submission of Plea itself raises some questions. The document, signed by Delyon on October 18, 2004, states that Delyon waived his right to be present at the arraignment, pretrial proceedings, time of entering his plea, and at his sentencing in this case. However, in indicating his plea, Delyon initialed two separate boxes, pleading both "guilty" and "no contest" to the charge.[3] The Waiver and Submission of Plea further stated Delyon had reached a plea agreement, but the terms of that plea agreement were not set out in the document signed by Delyon.

---

[3]  At a hearing on October 28, 2004, Delyon's appearance was waived and the District Court "deleted" the guilty plea and accepted the no contest plea.

Delyon alleges in his Petition that his parents retained his trial counsel, Mark Zenger (Zenger), and that Delyon had one meeting with Zenger after being released from jail and prior to leaving Hawai'i.  The Petition alleges, in part:

> On August 3, 2004, I was arrested by the Kauai police for taking beer from the pool hut of the Grand Hyatt Kauai Resort without permission while I was staying at the hotel with my parents.  (See Appendix A: KPD report#04-19452)  I was eighteen years old at the time and set to start college at the University of San Francisco on a baseball scholarship.  My parents hired Mark Zenger to represent me.  (See Appendix B: Mark Zenger time sheets)

> When I met with Mr. Zenger along with my parents, he told me that he was pretty sure that he could get the conviction classified as a misdemeanor.  (See Appendix C: Complaint) I told Mr. Zenger that I did not want to have a criminal conviction which would negatively affect my college scholarship and future career.  I had never been previously arrested or subjected to criminal prosecution.  Mr. Zenger informed me about a deferred acceptance of guilty plea which would allow me to avoid having a criminal conviction after a set period of time.  I later found out that this was never asked for in spite of what I was told.  Mr. Zenger told me that he had arranged with the prosecuting attorney to have my presence waived so that I could return to start the fall term of college at the University of San Francisco.  Mr. Zenger did not advise me that I should be present for my court appearances or of any negative consequence for not appearing in person.

In his Petition, Delyon also contests certain representations made by Zenger in the Waiver and Submission of Plea.  Zenger had signed the Waiver and Submission of Plea on October 28, 2004, certifying that:

1. I explained the defendant's right to be present.
2. The defendant represented to me that he/she does not wish to be present and that he/she wishes the proceedings to be conducted in his/her absence.
3. I read and explained this document to the defendant.
4. The statements contained herein conform with my understanding of the defendant's position.
5. I believe the defendant understands the document in its entirety.
6. The defendant's plea is voluntary.
7. The defendant understands the nature of the charge and the possible consequences.

To the contrary, Delyon alleges in his Petition that he signed the Waiver and Submission of Plea after returning to the mainland

6

and that Zenger did not contact him about the form, did not discuss the contents of the form with him, and did not discuss the consequences of signing the form. Delyon further alleges he believed the case would be resolved without a criminal conviction on his record, that he was not informed about the outcome of the case and only learned about his conviction after a background check for a new job. His Petition alleges, in relevant part:

> Our family returned home that same day, August 4, 2004. On August 22, 2004, I entered the University of San Francisco and moved into the college dormitory. In October, 2004, I received a "Waiver of Physical Presence Submission of Plea" form ("waiver and plea form") from Mr. Zenger's office in the mail at my dormitory. Mr. Zenger did not contact me about the form. I did not discuss the contents of the form with him or the consequences of signing the form. I signed the form on October 18, 2004, believing that the case would ultimately be disposed of without a criminal conviction on my record. (See Appendix D: Waiver of physical presence submission of plea form) I did not have any communication from Mr. Zenger after signing the waiver and plea form. He did not send me any further paperwork and did not inform me of the outcome of the case. (See Appendices E and F: calendar and judgment)

> In 2008, after I graduated from the University of San Francisco with a degree in finance, I interviewed for and obtained a position with Edward Jones as a financial consultant. On August 27th, 2008, approximately three weeks after beginning work with Edward Jones, I was informed I was being terminated for not disclosing a criminal conviction which appeared on a FBI background check. This was the first time I learned that I had a criminal conviction of any kind. I was told that I could not be rehired in the financial services industry for 10 years from the date of the conviction unless the charges were cleared on the federal level.

Based on the facts alleged in the Petition, Delyon made a showing of a colorable claim requiring a hearing. Taking the allegations as true, the Petition raises concerns that Delyon did not understand the plea he was entering or the consequences of it. The Petition contends Delyon was informed by Zenger about a deferred acceptance of guilty plea and that he signed the form "believing that the case would ultimately be disposed of without

a criminal conviction on my record." The Petition further contends that despite what he was told, a deferred acceptance of guilty plea was never requested on his behalf. A hearing is necessary to properly consider these allegations and to determine the merits of Delyon's claims.

The State argues that Delyon has waived his rights under HRPP Rule 40(a)(3) because he failed to timely appeal his conviction and has not shown extraordinary circumstances justifying this failure. We disagree that Delyon has waived his HRPP Rule 40 rights because, taking the facts in the Petition as true, Delyon alleges he did not learn about his conviction until August 2008. Therefore, Delyon did not "knowingly and understandingly" fail to raise the issues asserted in his Petition at an earlier time. See HRPP Rule 40(a)(3).

The State also argues the District Court did not err because the Waiver and Submission of Plea expressly states: "I understand that the court is not required to grant any request for a deferred acceptance of guilty or no contest plea." Nonetheless, there is an important and substantive difference between knowing a court has discretion to grant a deferred acceptance of a plea, as opposed to allegedly believing a deferred acceptance of plea will at least be requested on your behalf.

"Manifest injustice occurs when a defendant makes a plea involuntarily or without knowledge of the direct consequence of the plea." Barnett, 91 Hawai'i at 28, 979 P.2d at 1054 (citation omitted). Manifest injustice occurs where a defendant enters a no contest plea after being misinformed by the court that he is eligible for a deferred acceptance of that plea. State v. Kimsel, 109 Hawai'i 50, 58-59, 122 P.3d 1148, 1156-57 (App. 2005). Similarly, if the allegations in Delyon's Petition are taken as true and he signed the Waiver and Submission of Plea

believing his counsel would seek a deferred acceptance of his plea, he has raised a colorable claim as to manifest injustice and a hearing is warranted.

B.    **Delyon's Petition Asserts Colorable Claims of Ineffective Assistance of Counsel Warranting a Hearing**

Delyon's second ground in support of his Petition was ineffective assistance of counsel.  In this regard, he alleges the following facts in his Petition:

> As stated above, I only spoke with my attorney, Mr. Zenger once on August 4, 2004.  At that time, I told Mr. Zenger that I did not want to have a criminal conviction which would negatively affect my college scholarship and future career.  After I returned home to California on August 4, 2004, my only contact with Mr. Zenger was a telephone call with Donna Richards, who I believe was his secretary.  We did not discuss the substance of the waiver and plea form, only that I should fill it out and return it to her office by mail.
>
> I believed from my meeting with Mr. Zenger that the conviction resulting from my execution of the waiver and plea form would be erased from my record after a period of time if I did not commit any crimes. I was never informed of any plea arrangement between my attorney, Mark Zenger and the prosecution where Mr. Zenger gave up my right to ask for a deferred acceptance of guilty plea.  Mr. Zenger did not contact me after the court appearance where he filed my form and the judgment was entered, nor did he provide me with any paperwork.  I was not aware that the proceedings had resulted in a final conviction until I was informed by my employer on August 27, 2008.  (See Appendices A-F)

Taking these allegations as true, Delyon understood from his trial counsel that a conviction from the plea would "be erased from [his] record after a period of time if [he] did not commit any crimes."  Because the plea agreement was not included in the Waiver and Submission of Plea,[4] these allegations raise a colorable claim that absent counsel's alleged errors, Delyon would not have pleaded no contest to the theft charge and given

---

    [4]  Without the plea agreement included in the Waiver and Submission of Plea signed by Delyon, the record does not establish what Delyon understood about his plea deal.

up his right to defend against the charge. The no contest plea resulted in Delyon's waiver of important constitutional guarantees, including a right to trial, the privilege against self-incrimination, and the right to confront his accusers. See Reponte v. State, 57 Haw. 354, 362, 556 P.2d 577, 583 (1976) "Such a waiver is not constitutionally acceptable unless made voluntarily and with full understanding of the consequences." Id.

At this juncture in the Rule 40 process, we are reviewing only the allegations asserted by Delyon in his Petition to determine if they support colorable claims such that the District Court should have held a hearing. We conclude a hearing is required to properly consider the allegations in the Petition.

## III. Conclusion

Based on the foregoing, the August 7, 2009 Order and the January 26, 2010 Order entered by the District Court are vacated. The case is remanded to the District Court for further proceedings consistent with this opinion, including a hearing on Delyon's Petition.

DATED: Honolulu, Hawai'i, June 30, 2011.

On the briefs:

Deborah L. Kim
for Petitioner-Appellant

Tracy Murakami
Deputy Prosecuting Attorney
County of Kaua'i
for Respondent-Appellee

Chief Judge

Associate Judge

Associate Judge

10